UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

PAUL WILLIAM LEWIS,                 )
                                    )
            Plaintiff,              )
                                    )
v.                                  )      No.:   3:16-CV-315-TAV-HBG
                                    )
KEITH HAWKINS, et al.,              )
                                    )
            Defendants.             )

**MEMORANDUM OPINION**

This civil matter is before the Court on defendants' motion for summary judgment

[Doc. 58]. Plaintiff, proceeding *pro se*, responded in opposition [Doc. 63][1], and defendants

replied [Doc. 68]. Plaintiff then filed a motion for leave to file sur-replies [Doc. 69], which

Magistrate Judge H. Bruce Guyton granted in part [Doc. 78]. Magistrate Judge Guyton

noted that "[t]he District Judge will determine whether to consider the Plaintiff's [request

to file a sur-reply in response to defendants' motion for summary judgment]" [*Id.* at 5–6].

The Court will grant in part plaintiff's motion to file sur-replies [Doc. 69], and will consider

plaintiff's sur-reply [Doc. 72] in deciding the motion for summary judgment. For the

---

[1] In his response to defendants' motion for summary judgment, plaintiff also requests that this Court reconsider plaintiff's motion to consolidate cases and appoint counsel to represent plaintiff [Doc. 63 p. 15]. The Court first notes that *Lewis v. Walker*, 3:16-cv-486, which was the case plaintiff wanted to consolidate with the present case, has been dismissed [Doc. 100] and so the Court will deny plaintiff's request to consolidate cases as moot. Plaintiff has also failed to show any exceptional circumstances that would justify the appointment of counsel in this civil matter. *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 763 (E.D. Tenn. 2011). Plaintiff's request for reconsideration of the Court's order [Doc. 37] denying the appointment of counsel will therefore be denied.

reasons set forth below, the Court will then grant defendants' motion for summary judgment.

## I. Background

On July 24, 2015, plaintiff was traveling on Highway 27 near the Tennessee/Kentucky border [Doc. 24 ¶ 7]. As plaintiff and his companions crossed from Kentucky into Scott County, Tennessee, defendant Keith Hawkins of the Scott County Sheriff's Department began to follow plaintiff's vehicle in a marked police car [*Id.*]. Defendant Hawkins followed plaintiff's vehicle for several miles before turning on his blue lights and pulling plaintiff over [*Id.* ¶ 9]. At the time, plaintiff was traveling over the speed limit [*See* Doc. 59 p. 2; 59-2 p. 15].[2]

Defendant Hawkins asked plaintiff if there were any drugs in the vehicle and stated that a K9 unit was on its way [Doc. 24 ¶ 24]. When the unit arrived, the dog sniffed around the perimeter of his vehicle [Doc. 59-2 p. 24]. During the traffic stop, defendant Hawkins learned that a warrant had been issued for plaintiff's arrest [*Id.* at 26–27]. Defendant

---

[2] Plaintiff appears to now dispute this fact [Doc. 63 p. 2 (referencing a "redacted version of the Deposition of Paul William Lewis")]. However, the fact that plaintiff was driving over the posted speed limit was stated by plaintiff himself during his deposition [Doc. 59-2 p. 15]. The Court granted defendants' motion to strike, rejecting plaintiff's edits and revisions to the deposition testimony [Doc. 78]. On a motion for summary judgment, the Court must make all inferences in favor of the non-moving party, and when the sovereign immunity defense is raised, the Court must adopt the plaintiff's version of the facts. *Campbell*, 700 F.3d at 786. However, when the non-moving party's story is "blatantly contradicted by the record," the Court does not need to adopt their version of the facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, plaintiff has stated on the record that he was driving over the speed limit [Doc. 59-2 p. 15]. And while plaintiff might have various explanations for why he was driving over the speed limit, plaintiff's later claim that he was driving under the speed limit is contradicted by plaintiff's own testimony.

Hawkins asked plaintiff to step out of the vehicle, and plaintiff complied [Doc. 24 ¶¶ 26–27].

Plaintiff's right leg is amputated above his knee [*Id.* ¶ 27]. When he stepped out of the vehicle, defendant Hawkins asked if he could stand without the aid of his crutches [Doc. 59-2 pp. 9–10]. Plaintiff responded that he "probably could" [*Id.* at 10]. Plaintiff stood outside his vehicle, without his crutches, for two or three minutes while Hawkins searched plaintiff's person and told plaintiff that he was under arrest [*Id.*]. Plaintiff then grabbed his crutches and walked to Hawkins's truck, which was about twenty feet away, with Hawkins walking directly behind him [*Id.* at 11]. When he arrived at Hawkins's truck, he had to get himself in the backseat, which took a couple of minutes [*Id.* at 12–13]. Plaintiff was not handcuffed during this time, and after he got into defendant Hawkins's vehicle, he was transported to the Scott County jail [*Id.* at 13].

Plaintiff asserts that the traffic stop, vehicle search, and arrest were unlawful. The Court construes these claims as an unreasonable search and seizure claim under 42 U.S.C. § 1983. Plaintiff also asserts that he was discriminated against because of his physical handicap. The Court construes this claim as both a claim under the Americans with Disabilities Act ("ADA") for discrimination based on disability and a claim under 42 U.S.C. § 1983 for unreasonable seizure. *See City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1773 (2015) (considering whether officers violated the Fourth Amendment when they failed to accommodate an individual's disability). As a result, plaintiff asserts

3

that he suffered physical, mental, and emotional distress, and he therefore brings these claims against defendant Hawkins and Mayor Dale Perdue.

## II.     Standard of Review

Plaintiff is proceeding *pro se*, and the Court must "liberally construe the briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Bouyer v. Simon*, 22 F. App'x 611, 612 (6th Cir. 2001). At the same time, however, "the lenient treatment generally accorded to *pro se* litigants has limits," *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996), and courts have not "been willing to abrogate basic pleading essentials in *pro se* suits," *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Summary judgment is proper where there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court may consider the pleadings, discovery, affidavits, and other evidence on the record. *Id.* In the Sixth Circuit, there is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52. The Court must view the evidence in the light most favorable to the non-movant, and draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003). Thus, "the moving party has the initial burden of showing the absence of a genuine issue of material fact." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)).  On a motion for summary judgment by a defendant asserting a sovereign

immunity defense, the Court must adopt the plaintiff's version of the facts.  *Campbell v.*

*City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012).

Government officials are shielded from liability under the doctrine of qualified

immunity so long as their "conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  Plaintiffs,

therefore, have the burden of showing that each individual defendant violated a

constitutional right that was "clearly established" at the time of the defendant's alleged

misconduct.  *Id.* at 232.

## III.   Analysis

### A.     Defendant Hawkins

In determining whether defendant Hawkins is entitled to qualified immunity, the

Court must first define the right and determine whether that right was clearly established.

*Pearson*, 555 U.S. at 231.  Under the Fourth Amendment, individuals have a right to be

free from unreasonable seizures, so the Court must determine whether the seizure in this

case was reasonable.  *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also White v.*

*Pauly*, 137 S. Ct. 548, 552 (2017) (holding that the "clearly established law should not be

defined at a high level of generality[;] . . . [it] must be particularized to the facts of the

case" (internal quotation marks omitted)).  In evaluating the reasonableness of the seizure,

the Court weighs the intrusion on an individual's Fourth Amendment interests against the

governmental interests. *Graham*, 490 U.S. at 396. Plaintiff claims that the traffic stop, vehicular search, and arrest were all unlawful under § 1983. In determining whether defendant Hawkins is entitled to qualified immunity, the Court will look to see whether a constitutional violation occurred. The Court will separately consider the stop, search, and arrest.

First, a police officer is allowed to conduct a traffic stop if the officer has probable cause to believe that a civil traffic violation has occurred. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008); *Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred."). Here, plaintiff admits that he was exceeding the speed limit [*See* Doc. 59 p. 2; 59-2 p. 15]. While plaintiff disputes the fairness of pulling him over after the speed limit had changed on a hill [Doc. 63 p. 2], this is not a material fact. Regardless of why plaintiff was speeding, the fact that plaintiff was exceeding the speed limit established probable cause for the traffic stop.

Second, a police officer is allowed to use a "drug-detection dog as long as the traffic stop and detention are not unlawful or improperly extended." *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). Defendants have already established that the traffic stop was lawful, and plaintiff agrees that the subsequent K9 search only lasted a few minutes [Doc. 59-2 p. 24]. The Supreme Court has upheld similar searches that have lasted significantly longer. *See, e.g.*, *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (upholding a

6

search that lasted ten minutes).  Accordingly, the search in this case was not unlawful

because the initial traffic stop was lawful and the search only lasted a few minutes.

Furthermore, a police officer is allowed to search a person when an individual is

placed under arrest pursuant to a valid arrest warrant.[3] *United States v. Robinson*, 414 U.S.

218, 226 (1973) (upholding the constitutionality of a search incident to a lawful arrest).

Here, the arrest was lawful because defendant Hawkins became aware of a warrant for

plaintiff's arrest during the lawful traffic stop.  After an individual is placed under arrest,

the search of the person and the area within the person's "immediate control" is reasonable

to protect the arresting officer.  *Chimel v. California*, 395 U.S. 752, 763 (1969), *abrogated*

*on other grounds by Davis v. United States*, 564 U.S. 229 (2011); *Arizona v. Gant*, 556

U.S. 332, 339 (2009) (plurality opinion).  Plaintiff was standing on the outside of his

vehicle without handcuffs after a lawful traffic stop and lawful arrest.  Therefore, a search

of his person was also lawful.  Accordingly, defendant Hawkins is entitled to summary

judgment on the § 1983 claims related to the traffic stop and subsequent search and arrest.

Plaintiff next claims that he was discriminated against because of his physical

handicap, which the Court first interprets as a discrimination claim under the ADA.[4]  42

U.S.C. § 12132 states the following:

---

[3] Plaintiff argues that he was informed the warrant was for a robbery when it was actually for a probation violation [Doc. 24 ¶ 35].  This fact is not material.  Plaintiff agrees that there was a warrant out for his arrest [Doc. 59-2 p. 26–27].

[4] Here, plaintiff does not allege any facts that link defendant Perdue to the ADA claim. Thus, it appears that plaintiff is only alleging an ADA violation against defendant Hawkins.  This section will discuss the claims as they relate to defendant Hawkins.  The Court will then discuss defendant Perdue's liability separately.

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of public entity, or be subject to discrimination by such entity.

The ADA prohibits public entities from discriminating against qualified individuals, and public entities must modify practices and procedures to avoid discrimination and provide necessary aid and services to individuals with disabilities. 28 C.F.R. § 35.130. Claims under the ADA can fall into two categories: claims for intentional discrimination and claims for failure to provide a reasonable accommodation. *Roell v. Hamilton County*, 870 F.3d 471, 488 (6th Cir. 2017).

Plaintiff first fails to show that he was discriminated against *because* of his disability. *See State v. Morrow*, 01C01-0612-cc-512, 1998 WL 917802, at *9 (stating that it was doubtful defendant could raise a claim under the ADA because there was no showing that he was discriminated against on the basis of his disability). Defendant Hawkins initiated the traffic stop because plaintiff was speeding. It was only after plaintiff got out of the vehicle that defendant Hawkins noticed the disability, and he then asked plaintiff whether plaintiff was physically capable of standing without his crutches.

Under the second type of ADA claims—claims for a reasonable accommodation– the Supreme Court has declined to address whether Title II of the ADA applies in context of an arrest. *See Sheehan*, 135 S. Ct. at 1773 (2015). Circuits that have allowed such claims have traditionally stated that "exigent circumstances inform the reasonableness analysis under the ADA, just as they inform the distinct reasonableness analysis under the Fourth Amendment." *Sheehan v. City of San Francisco*, 743 F.3d 1211, 1232 (9th Cir.

2014), *rev'd in part, cert. dismissed in part*, 135 S. Ct. 1765 (2015); *see also Bahl v. County of Ramsey*, 695 F.3d 778, 784 (8th Cir. 2012). Even if plaintiff has a cognizable claim, though, defendant Hawkins is entitled to summary judgment based on the facts in this case. *See Roell*, 870 F.3d at 489.

In deciding what constitutes a reasonable accommodation, the Court must engage in a fact-specific inquiry. *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015). Here, plaintiff was asked whether he could stand on the side of his car, and plaintiff responded that he "probably could," giving defendant Hawkins reason to believe that no accommodation was necessary [Doc. 59-2 pp. 9–10]. When asked to walk to the police vehicle, plaintiff grabbed his crutches, walked over to the car, and got in, again giving the impression that no accommodation was necessary [*Id.*]. It only took plaintiff a few minutes to get over to the vehicle and get in the back seat of the vehicle, which indicates that it was reasonable for defendant Hawkins to believe that no accommodation was necessary.

As with ADA claims in other contexts, the service provider—in this case, arguably the police officer—is not expected to know or anticipate what accommodations must be made. *See, e.g.*, *Windham v. Harris County*, 875 F.3d 229, 236–37 (5th Cir. 2017) (holding that the plaintiff carries the burden of showing the limitations of his disability and requesting an accommodation); *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011) (holding that an employee bears the burden of proposing reasonable accommodations); *Robertson v. Las Animas County Sherriff's Dep't*, 500 F.3d 1185 (10th Cir. 2007) (holding that an individual must inform his employer of his disability prior to

9

raising a reasonable accommodation claim); *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (holding that the service provider must have known about both the disability and the limitations experience by the plaintiff). In other ADA cases, if the plaintiff fails to request an accommodation, then the plaintiff must show that the disability, limitation, and reasonable accommodation were "open, obvious, and apparent." *See Taylor*, 93 F.3d at 164. Here, plaintiff told defendant Hawkins that he did not have any limitations, and his conduct indicated that he would have no issue complying with Hawkins's instructions. Thus, even if this type of claim is cognizable, Hawkins is entitled to summary judgment.

Alternatively, plaintiff's claim could be construed as a claim under the Fourth Amendment for an unreasonable seizure given his disability. *See Sheehan*, 135 S. Ct. at 1775. The question is whether defendant Hawkins violated the Fourth Amendment when he asked plaintiff to step outside plaintiff's vehicle and walk to the police vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977) (holding that officers are allowed to order a driver to get out of the vehicle). Asking a driver to step out of the vehicle is not a "petty indignity." *Cf. Terry v. Ohio*, 392 U.S. 1, 16–17 (1968) (holding that "a careful exploration of the outer surfaces of a person's clothing all of his or her body" in public is a "petty indignity"). Here, the law is clearly established where defendant Hawkins asked plaintiff to step out of the vehicle, placed him under arrest, and then asked him to walk to the police car.

In determining whether defendant Hawkins's actions were lawful, the Court must ask whether his actions were objectively reasonable given the facts and circumstances of the specific case. *Graham*, 490 U.S. at 396. Given plaintiff's disability, the Court can consider whether it was reasonable for defendant Hawkins to ask plaintiff to step out of the vehicle and walk to the police car. Again, plaintiff was asked whether he was physically capable of standing on the side of the road. He responded in the affirmative and proceeded to comply with all of defendant Hawkins' request. At no point did defendant Hawkins physically touch or restrain plaintiff besides when he conducted the initial search of plaintiff's person. Alleged humiliation suffered by plaintiff does not prove that defendant Hawkins should have known plaintiff needed assistance. Based on what plaintiff communicated to defendant Hawkins, defendant Hawkins was not aware of any additional limitations on plaintiff's ability to stand, walk, or put himself in a vehicle.

No genuine issues of material fact exist because plaintiff admitted to the above-described facts in his briefs and deposition. Defendant Hawkins is therefore entitled to summary judgment on the disability claims. Under the ADA, plaintiff has failed to show that a public entity discriminated against him on the basis of his disability. Furthermore, plaintiff has failed to show that either an individual officer or a public entity failed to reasonably accommodate his disability. Because defendant Hawkins did not violate clearly established law, he is entitled to qualified immunity and the Court will grant summary judgment for defendants on plaintiff's ADA claim and § 1983 claims.

## B.     Defendant Perdue

In the amended complaint, plaintiff names Dale Perdue, Mayor of Scott County, Tennessee, as a defendant. Defendants argue that defendant Perdue is entitled to summary judgment because plaintiff has not shown that defendant Perdue violated plaintiff's constitutional rights and so a claim for municipal liability must fail [Doc. 59 pp. 10–11]. Plaintiff responds that the Scott County Sheriff's Department had a policy of waiting at the Kentucky/Tennessee state line to catch drug traffickers, and so the municipality can be held liable for failure to train its officers [Doc. 63 pp. 14–15].

To succeed on a claim against a municipality, a plaintiff must show that his or her constitutional rights were violated and that the "moving force" behind the deprivation of the plaintiff's constitutional rights was a policy of the municipality. *Powers v. Hamilton County Publ. Def. Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007). Inadequate training can lead to a claim of liability when it amounts to "deliberate indifference" to the rights of individuals. *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008). Deliberate indifference can be shown by demonstrating that a particular municipality has ignored previous abuses and was on notice of its deficiencies. *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

The Court first notes that conclusory statements alleging constitutional violations are insufficient to survive a motion for summary judgment. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). In this case, plaintiff argues that defendant Hawkins showed "deliberate indifference" that amounted to "obvious" unconstitutional violations [Doc. 63 p. 14]. These conclusions are not enough to create a genuine dispute without supporting

12

facts. The only fact that plaintiff points to is the fact that the Scott County Sheriff's Department parks its vehicles at the Kentucky/Tennessee state line to stop vehicles suspected of drug trafficking [*Id.* at 15]. It is not unconstitutional, however, for the police to park at the state line. And it is not unconstitutional for officers to pull over vehicles that are speeding. *Whren*, 517 U.S. at 810 (1996); *see also United States v. Crotinger*, 928 F.2d 203, 206 (6th Cir. 1991) (holding that it is objectively reasonable for a police officer who is operating a speed trap to pull over vehicles exceeding the speed limit). The constitutionality of a traffic stop does not depend on the actual motivation of the officers. *Whren*, 517 U.S. at 813.

It is not unreasonable for police officers to wait for vehicles at a state border. As long as the officers have probable cause to pull over a vehicle, they are operating within the boundaries of the Fourth Amendment. Plaintiff has failed to show that the Scott County Sheriff's Department's policy amounted to deliberate indifference as to plaintiff's constitutional rights so as to support a claim of municipal liability. Accordingly, the Court will grant defendants' summary judgment motion as to claims against defendant Perdue.

## IV. Conclusion

Accordingly, in a separate order filed contemporaneously with this memorandum opinion, the Court will **GRANT** defendants' motion for summary judgment [Doc. 58] for all claims against defendant Hawkins and defendant Perdue. The Court will also **GRANT in part** plaintiff's motion to file sur-replies [Doc. 69], and the Court considered the

plaintiff's sur-reply [Doc. 72] in granting defendants' motion for summary judgment.  The

Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE